FILED
United States Court of Appeals
Tenth Circuit

June 7, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALONSO AYON CORRALES,

Defendant-Appellant.

No. 11-3385
(D.C. Nos. 5:11-CV-04057-SAC,
5:07-CR-40078-SAC-1)
(D. Kan.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

---

Alonso Ayon Corrales, a federal prisoner proceeding pro se,[1] seeks a

Certificate of Appealability ("COA") to appeal from the district court's denial of

his 28 U.S.C. § 2255 motion, which collaterally attacks his conviction and

---

[*] This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] Because Mr. Corrales is proceeding pro se, we construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

sentence. For the reasons below, we deny his request for a COA and dismiss this matter.

## I. Background

In May 2009, a jury convicted Mr. Corrales of two drug crimes: conspiracy to possess with the intent to distribute cocaine, and possession with the intent to distribute cocaine. The events that led to these convictions began in July 2005, when an officer of the Russell County, Kansas Sheriff's Department pulled over a car for speeding. In the car, the officer found Mr. Corrales in the passenger seat and a companion in the driver's seat. After becoming suspicious of illegal activity, the officer asked the companion for consent to search the car, which was given. During that search, the officer discovered cocaine in a secret compartment in the car's dash.

In a post-arrest interview, Mr. Corrales claimed that he did not know drugs were stored in the car. He then proceeded to describe how he ended up in Kansas. Mr. Corrales explained that he was from Modesto, California, and he planned on vacationing in Durham, North Carolina, before continuing on to Atlanta, Georgia. In order to take this vacation, he had borrowed a car from a friend named Ricardo. Although he had known Ricardo for two years, Mr. Corrales could not recall his last name until an officer suggested that it was "Padilla"—the name on the vehicle's registration. In addition, Mr. Corrales gave inconsistent statements regarding exactly how he came into possession of the car.

Mr. Corrales further explained that once he and his companion arrived in Durham, he was supposed to call one of two numbers that Mr. Padilla had written on an atlas and tell whomever answered that he had Mr. Padilla's car. Someone he did not know would then pick up the car and later return it. Subsequently, Mr. Corrales and his companion were to travel to Atlanta to stay with someone named Arturo, whose address was also written on the atlas by Mr. Padilla.

Despite Mr. Corrales's insistence that he did not know that drugs were located in the car, a federal grand jury in the District of Kansas indicted Mr. Corrales, Mr. Padilla, and a man named Heriberto Rodriguez (a previous owner of the vehicle) in July 2007 on drug charges related to Mr. Corrales's arrest in Kansas. During discovery, Mr. Corrales's defense counsel received from the government a National Crime Information Center criminal-history report on Mr. Padilla that had been completed *around the time of the Kansas indictment.*[2] This report listed Mr. Padilla's 2007 arrest for a drug offense at the California-Mexico border, but it did not provide any subsequent history—presumably, because the

---

[2] Relevant to Mr. Corrales's application for a COA is that three months before the Kansas indictment, Mr. Padilla was involved in a drug offense that did not involve Mr. Corrales or Mr. Rodriguez. *See United States v. Ayon Corrales*, 608 F.3d 654, 656 (10th Cir. 2010). At that time, federal officers arrested Mr. Padilla at the California-Mexico border when he tried to enter the United States in a pickup truck containing methamphetamine and cocaine. A federal grand jury in the Southern District of California indicted Mr. Padilla on drug charges, and he subsequently pleaded guilty to a charge of importation of cocaine on October 30, 2007—more than three months after the Kansas indictment.

report was generated before any conviction.

Mr. Corrales's trial began on April 29, 2009, and Mr. Padilla was scheduled to testify on behalf of the government. On April 30, the government provided Mr. Corrales's counsel with Mr. Padilla's judgment and conviction for the 2007 California drug offense. After receiving this information, Mr. Corrales's counsel moved to dismiss the indictment arguing that the government never disclosed Mr. Padilla's 2007 conviction, and Mr. Corrales was unfairly prejudiced as a result.

Mr. Corrales's counsel asserted that if he had known of this conviction, he would have spent significant time investigating the similarity of Mr. Padilla's 2007 drug offense to the 2005 Kansas case for impeachment purposes. Further, Mr. Corrales argued that the delay in disclosure prevented him from obtaining evidence under Federal Rule of Evidence 404(b) ("Other crimes, wrongs, or acts") to show that Mr. Padilla is a regular drug trafficker who would trick others—like Mr. Corrales—into unknowingly transporting drugs across the country, once Mr. Padilla first had transported the drugs over the border from Mexico. At a conference, the district court denied Mr. Corrales's motion.[3]

Mr. Padilla testified at trial. During his direct examination, he claimed that he had no knowledge that he was carrying drugs when he was stopped at the

---

[3] Also at the conference, Mr. Corrales's counsel stated that the court's findings indicate that he may have been "professionally negligent in finding some of that evidence." R., Vol. I, at 261–62 (Dist. Ct. Mem. & Order, filed Dec. 7, 2011).

border in the 2007 California drug offense, and that he had only pleaded guilty to that drug offense in order to avoid trial. Mr. Padilla then testified about the 2005 Kansas drug offense involving Mr. Corrales. Mr. Padilla stated that, at the request of Mr. Rodriguez, Mr. Padilla was to smuggle drugs from Mexico to North Carolina in a car provided by Mr. Rodriguez. However, once the drugs were in California, Mr. Padilla wanted to back out of the deal. Upon learning of this, Mr. Rodriguez directed Mr. Padilla to deliver the car to another person.

This led Mr. Padilla to a gas station in Modesto where he met, and delivered the car to, Mr. Corrales. Mr. Padilla testified that he did not write anything in the atlas in the car, nor did he know an "Arturo" in Atlanta.[4] This

---

[4] Mr. Corrales's counsel voiced various concerns to the district court regarding the disclosure of Mr. Padilla's 2007 California drug conviction. For instance, the morning after the court denied Mr Corrales's oral motion to dismiss, defense counsel submitted a brief that again sought dismissal of the case. The brief addressed Rule 404(b) but it did not request a ruling on any evidentiary issue, such as the extent to which Mr. Corrales could cross-examine Mr. Padilla. Then, during a break in Mr. Padilla's direct testimony, Mr. Corrales's attorney again raised the Rule 404(b) issue. The court "suggested that it would limit the cross-examination of [Mr.] Padilla, but it also indicated that it would await completion of direct examination before finally deciding." *Ayon Corrales*, 608 F.3d at 660. Upon a request for clarification following Mr. Padilla's direct examination, the district court ruled that Mr. Corrales could cross-examine Mr. Padilla on areas that the government went into on direct—and the court did "no[t] limit[] . . . the cross-examination of [Mr.] Padilla regarding his 2007 offense." *Id.* at 662.

Mr. Corrales then renewed his motion to dismiss at the jury-instruction conference, which was again denied by the district court. In a subsequent written order, it held that there was "no colorable claim of unfair surprise as the defendant had actual knowledge of the federally charged offense back in October

-5-

evidence tended to support the government's theory that Mr. Corrales had knowledge of the drugs located in the car. Following direct, Mr. Corrales's counsel cross-examined Mr. Padilla regarding his 2007 California drug offense. The jury convicted Mr. Corrales of both counts in the indictment. This court affirmed both convictions on direct appeal.

Mr. Corrales then filed the instant § 2255 motion, claiming that his trial counsel was constitutionally deficient. Mr. Corrales made the following arguments to the district court regarding his trial counsel's alleged ineffective assistance: (1) trial counsel failed to review discovery related to Mr. Padilla's 2007 California drug arrest or investigate Mr. Padilla's resulting drug conviction; (2) trial counsel failed to seek clarification from the trial court as to the scope of questioning on cross-examination that could be undertaken regarding Mr. Padilla's 2007 California arrest and conviction; and (3) trial counsel failed to cross-examine Mr. Padilla regarding what additional vehicles Mr. Padilla had available at the time Mr. Corrales borrowed a car from him—the purported

---

of 2007 and apparently did nothing to investigate it independently." R., Vol. I, at 262 (quoting Dist. Ct. Doc. No. 108, at *4 (Dist. Ct. Mem. & Order, filed June 30, 2009) (5:07-cr-40078-SAC)) (internal quotation marks omitted). In addition, the district court noted that defense counsel had been able to confront Mr. Padilla, upon the government's full disclosure of records and information on this conviction. Finally, the district court stated, "What more the defendant could have discovered in his own separate investigation remains a matter of sheer speculation and does not support any substantial claim that material evidence favorable to the defendant has been suppressed." *Id.* (quoting Dist. Ct. Doc. No. 108, at *4) (internal quotation marks omitted).

relevancy being that it would have established "a link" between the car that Mr. Padilla used in committing the 2007 California drug offense (a Ford F-150) and the car that he had available at the time of the 2005 Kansas drug offense.

Mr. Corrales asserted that this conduct by trial counsel fell below an objective standard of reasonableness and but for this deficient performance, a link between the 2005 and 2007 offenses would have been established. Mr. Padilla would have been thereby exposed as a drug trafficker who "tricks" unwitting accomplices into transporting drugs once he first transports the drugs across the border from Mexico. In other words, the government would never have been able to prove that Mr. Corrales had knowledge of the existence of the cocaine that was found in the car seized in Kansas.

The district court denied the motion under the ineffective-assistance-of-counsel standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under these standards, Mr. Corrales "must show that (1) his counsel's performance was constitutionally deficient, *and* (2) counsel's deficient performance was prejudicial." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) (emphasis added) (citing *Strickland*, 466 U.S. at 687), *overruled on other grounds by Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001). And, in applying the two-part *Strickland* test to dispose of an ineffective-assistance claim, it is well-settled that a court may "proceed directly to the prejudice prong of the *Strickland* analysis." *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir.

2010); *see Strickland*, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Regarding trial counsel's alleged failure to review discovery regarding Mr. Padilla's 2007 drug arrest, and subsequent failure to independently investigate the circumstances of that drug arrest and eventual conviction, the district court held that there was no constitutional deficiency. The district court noted that although counsel's failure to follow up on Mr. Padilla's California arrest was an "oversight," it was not so egregious as to be "contrary to prevailing professional norms." R., Vol. I, at 263–64. This, according to the district court, was for two reasons. First, Mr. Padilla's 2007 California drug arrest did not show up as a conviction in the criminal history report at the time Mr. Corrales's trial counsel reviewed it, so he merely relied on the prospect of future government disclosures. *Id.* at 264. Second, trial counsel actually got an opportunity to investigate Mr. Padilla's conviction prior to Mr. Padilla's cross-examination: from April 30 to May 4, 2009. This included an opportunity to review various documents the government had on Mr. Padilla's 2007 California drug offense—specifically, the officer's arrest report and interview, the officer's 2008 closing report, the officer's 2009 proffer report, the plea agreement, the criminal judgment, and the docket sheet.

On the prejudice prong, the district court first addressed Mr. Corrales's arguments related to the failure to investigate. It held that "there [is not] anything in the record to suggest that an independent investigation would have uncovered the intended recipient and location for [Mr.] Padilla's 2007 delivery of drugs. Even assuming these facts were discoverable, the[re] is also nothing to suggest that they would have been relevant and admissible evidence in favor of [Mr.] Corrales let alone that they would have caused a different result." R., Vol. I, at 267. Further, the district court stated that "[m]issing from [Mr. Corrales's] argument is any logical connection between what is known about the 2007 offense and what would tend to show that [Mr.] Corrales was [an] unwitting accomplice in 2005. That [Mr.] Padilla regularly transported drugs from Mexico does not make it any more likely that [Mr.] Padilla tricked or compelled [Mr.] Corrales to transport drugs." *Id.*

Next, the district court examined Mr. Corrales's arguments related to his counsel's alleged failure to seek clarification from the district court as to the permissible scope of cross-examining Mr. Padilla. Trial counsel, who also represented Mr. Corrales on direct appeal, stated on appeal that the district court unduly restricted his ability to cross-examine Mr. Padilla in violation of the Confrontation Clause. This court rejected that claim by noting that "[w]e discern[ed] no limitations on the cross-examination of [Mr. Padilla] regarding his 2007 offense"; however, we also noted that "[Mr.] Corrales's attorney did not

-9-

request further clarification [of the scope of cross-examination]." R., Vol. I, at 268 (quoting *Ayon Corrales*, 608 F.3d at 660, 662) (internal quotation marks omitted).

The district court rejected Mr. Corrales's § 2255 claim by holding that he failed to show any prejudice. In doing so, the district court stated that "[t]he record does not sustain any inferences that cross examination . . . would have resulted in testimony favorable to [Mr.] Corrales or would have made it more likely that the jury would have found [him] to be an unwitting accomplice to [Mr.] Padilla." *Id.* at 270. Moreover, the district court explained that "[d]efense counsel elicited from [Mr.] Padilla his intentions to transport more drugs across the border and effectively created for the jury the impression of [Mr.] Padilla as a drug trafficker. [Mr.] Corrales fails to explain how answers to [any] additional questions would have materially changed the jury's impression of [Mr.] Padilla." *Id.*

Finally, the district court examined trial counsel's alleged failure to ask Mr. Padilla about available vehicles he could have loaned Mr. Corrales in 2005. The district court found that this claim failed on both the performance and prejudice prong. The district court held that both prongs were not met because "[t]he critical link between the offenses was made through [Mr.] Padilla, and the possibility that [Mr.] Padilla owned a Ford F-150 truck in 2005 does not tend to prove any fact material to [Mr.] Corrales's innocence or guilt for that offense[;]

-10-

[n]or as a matter of trial strategy would defense counsel reasonably expect such a question to elicit any favorable testimony from [Mr.] Padilla in light of what he said on direct examination about the 2005 offense. " *Id.* at 271.

Having disposed of all of Mr. Corrales's claims, the district court also denied him a COA. Mr. Corrales now seeks a COA from this court, reasserting his ineffective-assistance claims.

## II. Discussion

A COA is a jurisdictional prerequisite to our review of the merits of a § 2255 appeal. *See* 28 U.S.C. § 2253(c)(1)(B); *Gonzalez v. Thaler*, 132 S.Ct. 641, 649 (2012). We will issue a COA "only if the [movant] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists could debate whether . . . the [§ 2255 motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *United States v. Tony*, 637 F.3d 1153, 1157 (10th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). When, as here, the district court denies a motion on the merits, the movant carries his burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *United States v. Bedford*, 628 F.3d 1232, 1234 (10th Cir. 2010) (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

In his COA application before us, Mr. Corrales makes the same arguments that he did before the district court. Namely, he contends that his counsel rendered ineffective assistance for failure (1) to review and independently investigate Mr. Padilla's 2007 California drug offense that was disclosed by the government in discovery material; (2) to seek clarification of district court's order limiting cross-examination of Mr. Padilla; and (3) to elicit testimony about the type of car that Mr. Padilla had available at the time of the 2005 Kansas drug offense. Mr. Corrales asserts that if Mr. Padilla had been discredited—which supposedly would have occurred if his counsel had not been ineffective—the remaining evidence would not have supported Mr. Corrales's conviction.[5]

---

[5] In his COA application, Mr. Corrales also asserts a claim that the district court abused its discretion in refusing to hold an evidentiary hearing on his § 2255 motion. After a review of the record, it appears that Mr. Corrales did not raise this claim before the district court until his reply to the government's response to his amended § 2255 motion—filed on November 4, 2011. The claim was stated in cursory fashion; Mr. Corrales provided no argument to support his view that "factual disputes and inconsistencies beyond the record exist." R., Vol. I, at 241 (Movant/Def.'s Reply Gov't's Response Movant/Def.'s § 2255 Mot., filed Nov. 4, 2011) (internal quotation marks omitted). At that point, the district court already had found an evidentiary hearing to be unnecessary, in the context of denying Mr. Corrales's request for appointment of counsel. *See* R., Vol. I, at 195–96 & n.1 ("In light of the exhaustive trial record and the nature of the defendant's arguments, an evidentiary hearing appears unnecessary at this stage.") Further, in its later order denying the entirety of Mr. Corrales's § 2255 motion (after Mr. Corrales had actually made his cursory request for a hearing), the district court again decided that an evidentiary hearing was unnecessary. *See* R., Vol. I, at 258 ("A hearing is unnecessary here, for the record and the reasons stated hereafter conclusively establish that the defendant is not entitled to relief on his claims."). Mr. Corrales's evidentiary-hearing claim is presented in just as

(continued...)

-12-

However, having carefully considered the record and the controlling law, we conclude—for substantially the reasons articulated by the district court—that reasonable jurists could not debate the correctness of the district court's resolution of Mr. Corrales's claims.  Accordingly, we deny a COA.

### III.  Conclusion

For the foregoing reasons, we **DENY** Mr. Corrales's request for a COA and **DISMISS** this matter.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[5](...continued)
cursory and inscrutable fashion here as it was before the district court; he provides no argument to support his contention that the district court erred in failing to grant him an evidentiary hearing.  We are hard-pressed to discern any error in the district court's ruling on this matter and conclude that reasonable jurists would not disagree. *See United States v. Gallegos*, 459 F. App'x 714, 716–17 (10th Cir. 2012) ("[The habeas movant's] conclusory assertion does not suggest that there is a dispute of fact warranting an evidentiary hearing and does not provide us with guidance as to what factual inquiry an evidentiary hearing might address if granted.").  Accordingly, insofar as Mr. Corrales's claim for an evidentiary hearing is cognizable, we deny a COA regarding it.