*677 ORDER AND JUDGMENT *
PAUL KELLY, JR., Circuit Judge.
Defendant-Appellant Paul Reyes Sedillo appeals from his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). He raises two challenges to his conviction: (1) the district court violated his confrontation rights under the Sixth Amendment by allowing DNA expert, Carrie Zais, to testify about the results of DNA analysis she neither performed nor observed; and (2) the district court erred in denying his motion for judgment of acquittal on the grounds that there was insufficient evidence to support the theory that he actually or constructively possessed a firearm. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

This case arises from a 911 call in Roswell, New Mexico. On the night of October 22, 2009, Mr. Sedillo’s mother, Lá-veme Sanchez Webb, called the police to report a disturbance outside her home. I R. 81. At the time, Mr. Sedillo was living with his mother, having moved into the house after his release from prison on August 29, 2009. Ill R. 478-79. Mr. Sed-illo’s brother, Roman Reyes, had moved out of the house to make room for Mr. Sedillo. Id. at 479-80. When Mrs. Webb called 911, Mr. Sedillo was in his bedroom, and Mr. Reyes was asleep in his car outside. Id. at 476, 510.
The police arrived and secured the residence in anticipation of obtaining a search warrant. Id. at 337-88. Officer Harrell executed the warrant, and while searching the small living room, found a shotgun in the living room closet. Id. at 341-42. Officer Harrell testified that “when [he] opened [the closet], there was a shotgun visible just inside the threshold of that closet.... [He] immediately saw the shotgun.” Id. at 342. According to Officer Harrell, the small closet “wasn’t even latched[;] ... the door was barely shut ... partly [because the] shotgun was blocking the door from completely closing.” Id. at 344. Officers recovered two shotgun hulls from outside the home as well. Id. at 346-47.
Mrs. Webb was surprised to learn that the police had confiscated a shotgun. Id. at 473. She testified that there were no firearms in her home when Mr. Sedillo moved in, and that she had been in the closet two weeks before the search and did not see a shotgun. Id. at 471, 474-75. Mrs. Webb further testified that she always kept her house locked when she was not home, and that only her sister had an extra key. Id. at 477. According to Mrs. Webb, neither Mr. Sedillo nor Mr. Reyes had a key to the house. Id. at 475. On cross-examination, Mrs. Webb stated that she did not see Mr. Sedillo bring a gun into the house, and never saw Mr. Sedillo go into the closet. Id. at 478, 488.
The search revealed several items belonging to Mr. Sedillo. These were: a Social Security card, a medicine bottle, an envelope, and a document titled “Supplemental Nutrition Assistance Program,” all bearing Mr. Sedillo’s name. Id. at 393-95. The police found these items in Mr. Sedil-lo’s bedroom. Id. They did not find any of Mr. Sedillo’s possessions in the living room closet. See id. at 403-04.
The police obtained a DNA sample from Mr. Sedillo. Id. at 396-98. This sample, along with the shotgun, was sent to a New Mexico state laboratory for testing. Id. at *678 242, 320. DNA analyst Stephanie Willard collected DNA from the shotgun, which revealed that Mr. Sedillo was a major contributor. Id. at 242^13. Prior- to trial, however, Ms. Willard moved to another country and was unable to testify. Id. at 239. The government moved in limine to allow Carrie Zais, a DNA analyst who technically reviewed Ms. Willard’s work, to testify. Aplt. Open. Br., Att. B at 2. Over Mr. Sedillo’s objection, the court granted the motion. Id. at 3.
At trial, the government offered Ms. Zais as an expert in the field of DNA analysis. Ill R. 235. On direct examination, Ms. Zais testified generally about DNA profiling. Id. at 236. The government showed Ms. Zais the report from Ms. Willard, and Ms. Zais said that she was the technical reviewer. Id. at 237, 241. She explained that, in this capacity, she reviewed the case notes and would “have to agree with and would have drawn the same conclusions as the analyst performing the testing.” Id. at 241. The government asked, “based on your review of that laboratory work, have you come to a conclusion based on your own training and experience as to who the source of the DNA found on the shotgun was?” Id. at 242. Ms. Zais answered “Yes” and said it was Mr. Sedillo. Id.
The government then asked Ms. Zais to describe the DNA testing procedure used in this case. Id. at 242-46, 283-84. Ms. Zais explained that Ms. Willard “swabbed the textured parts of the [gun],” “placed [the swab] in a tube,” “remove[d] just the DNA,” and “quantitated” the DNA to determine how much was present. Id. at 242-44, 283. Because the sample was “dirty,” Ms. Willard “diluted it out with water and then retested it.” Id. at 245, 283. Ms. Willard then was able to obtain a DNA profile. Id. at 283. On cross-examination, Ms. Zais confirmed that she did not perform any of the testing in the case. Id. at 286. The actual DNA report was never admitted into evidence. See id. at 233-307.
At the close of the government’s case, Mr. Sedillo moved for a judgment of acquittal under Rule 29 on the grounds that there was insufficient evidence of actual or constructive possession. Id. at 532. The court took the motion under advisement. Id. at 537. At the close of evidence, Mr. Sedillo renewed his Rule 29 motion, which after a brief hearing, the court denied. Id. at 541-42, 565.
Before closing arguments, the judge instructed the jury that they could convict Mr. Sedillo of being a felon in possession on a theory of actual or constructive possession, but they were to consider the DNA evidence for actual possession alone. I R. 117. Mr. Sedillo did not request a limiting instruction on the expert testimony. See id. at 123. The jury returned a general verdict of guilty. Id. at 105. The court imposed a sentence of 262 months’ imprisonment followed by five years’ supervised release. Id. at 172-73. Mr. Sed-illo timely appealed. Id. at 176.

Discussion

Mr. Sedillo raises two arguments on appeal: (1) the district court violated his confrontation rights by admitting Ms. Zais’s testimony; and (2) the district court erred in denying his motion for judgment of acquittal. We review the district court’s admission of evidence for abuse of discretion. United States v. Blechman, 657 F.3d 1052, 1063 (10th Cir.2011). If the court erred, and the defendant bases his challenge on the Confrontation Clause, we need not reverse if “the error is harmless beyond a reasonable doubt.” United States v. Burke, 571 F.3d 1048, 1057 (10th Cir.2009).
*679 Because the jury returned a general verdict of guilty, we cannot determine on which theory of possession (actual or constructive) the jury relied, and we must affirm if the evidence is sufficient to support either theory. See Griffin v. United States, 502 U.S. 46, 59-60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); United States v. Ayon Corrales, 608 F.3d 654, 657-58 (10th Cir.2010). Here, the evidence supports a finding of constructive possession. As such, we need not address actual possession, nor must we delve into Mr. Sedillo’s confrontation argument. Even if the court erred in admitting Ms. Zais’s testimony, any error was harmless beyond a reasonable doubt because Mr. Sedillo’s conviction can be sustained on a theory of constructive possession, for which the jury did not consider the DNA evidence.[1]
Limiting our discussion to constructive possession, we do not believe the district court erred in denying Mr. Sedil-lo’s motion for judgment of acquittal. Our review is de novo as to the sufficiency of the evidence. United States v. Smith, 641 F.3d 1200, 1204 (10th Cir.2011). “We view the evidence in the light most favorable to the verdict to ascertain whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.” Id. at 1204-05.
To convict Mr. Sedillo of being a felon in possession under § 922(g)(1), the government was required to prove that he “had previously been convicted of a felony, ... thereafter knowingly possessed a firearm, and such possession was in or affected interstate commerce.” United States v. McCane, 573 F.3d 1037, 1046 (10th Cir.2009) (quotation omitted). Possession of a firearm under § 922(g)(1) can be actual or constructive. Id. “Constructive possession exists when a person knowingly holds the power and ability to exercise dominion and control over a firearm.” Id. (quotation omitted). In cases of joint occupancy where the government relies on circumstantial evidence of constructive possession, the government must “show some connection or nexus between the defendant and the firearm.” United States v. King, 632 F.3d 646, 651 (10th Cir.2011). “There must be some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.” United States v. Hishaw, 235 F.3d 565, 571 (10th Cir.2000) (quotation omitted).
Mr. Sedillo argues that this required nexus is missing, and thus no plausible inference of knowledge and access can be drawn, because the police did not find any of his possessions in the living room closet. Aplt. Open. Br. 24. The district court heard argument on the issue, and relying on the “plausible inference” language from Hishaw, found the evidence sufficient. Ill R. 565. We agree.
First, Mr. Sedillo does not deny that he lived in the house, nor does he suggest that he could not access the closet. His mother’s testimony, that she never saw Mr. Sedillo open the closet, is besides the point because we only ask whether Mr. Sedillo has the power to access the gun, not whether he actually did. See King, *680 632 F.3d at 652-53 (finding the evidence sufficient where a defendant, though lacking car keys, “could have accessed” the contraband in the car); United States v. Mendez, 514 F.3d 1035, 1042 (10th Cir.2008) (“Because the gun was accessible to anyone in the house, the jury could reasonably infer that anyone using the room had knowledge of and access to the gun.”). Second, we find that, in the case of two occupants where one occupant denies knowledge of a shotgun, it is plausible to infer the other occupant knew about the shotgun. This does not, as Mr. Sedillo suggests, shift the burden to Mr. Sedillo. See Aplt. R. Br. 3. Nor does it ignore that someone else may have brought the gun into the house. See id. at 4. In fact, defense counsel, in its closing argument, suggested three times that Mr. Reyes, Mr. Sedillo’s brother, was responsible for the shotgun. See III R. 593, 600-01. The jury was free to consider this point in reaching its decision. That the jury found this argument unpersuasive does not alter our conclusion.
In response, Mr. Sedillo cites three of our prior decisions — United States v. Mills, 29 F.3d 545 (10th Cir.1994), Hishaw, and United States v. Taylor, 113 F.3d 1136 (10th Cir.1997) — where we found the evidence insufficient for constructive possession. We find these cases readily distinguishable from the instant case. In Mills, we found evidence insufficient to convict where a defendant’s house mate placed a gun in the dining room table compartment without the defendant’s knowledge and contrary to his instructions. 29 F.3d at 550. But here, our other occupant, Mrs. Webb, denied knowledge of the shotgun. Likewise, in Hishaw, we found evidence insufficient to convict where a defendant was driving a car that belonged to a friend of his brother, police found a gun in the car, but police were unable to show the defendant exercised dominion over the car. 235 F.3d at 572. Here, however, Mr. Sedil-lo lived in the house, and his personal items — a social security card, medicine bottle, and papers — were there. Finally, in Taylor, we found the evidence insufficient where three men lived together, police found a firearm in one bedroom closet, and the only evidence connecting the defendant to that bedroom were his receipts and pawn shop tickets found in the room. 113 F.3d at 1145-46. Unlike Taylor, we only have two occupants here, and thus, it is plausible to infer that Mr. Sedillo, the only other occupant, knew about the shotgun.
The dissent suggests that the nexus between Mr. Sedillo and the shotgun is missing. According to the dissent, we have “pile[d] one inference upon another” to establish that Mr. Sedillo had knowledge of the shotgun. The problem with this argument is that we must view the evidence in the light most favorable to the government. United States v. Bagby, 696 F.3d 1074, 1080 (10th Cir.2012) (citation omitted). Thus, we must credit Mrs. Webb’s testimony that only her sister had an extra key, not Mr. Reyes’s testimony to the contrary. See United States v. Williamson, 53 F.3d 1500, 1516 (10th Cir.1995) (“[W]e necessarily resolve any conflicts in the evidence in favor of the [verdict] .... ”).
In the end, a rational jury could have concluded Mr. Sedillo knew about the gun. Mens rea inferences almost always require some inference from circumstantial evidence — few will admit to bearing an unlawful mental state. And viewing the circumstantial evidence as we must, Mr. Sedillo’s room was just feet away from the gun and there simply is nothing to link Mr. Reyes or Mrs. Webb to the gun. In this light, we find sufficient evidence to support the jury’s finding of constructive possession. And because the evidence *681 supports a theory of constructive possession, any confrontation error was harmless beyond a reasonable doubt.
AFFIRMED.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. At oral argument, the government raised a harmless error argument different from the one offered in its brief. The government suggested that, even if Ms. Zais's reference to the DNA report was objectionable, her conclusion that Mr. Sedillo's DNA was on the shotgun was not. See Oral arg. at 27:17-28:13. Thus, this opinion would still be submitted to the jury. See id. Because the government did not raise this precise argument in its brief, we will not consider it on appeal. Toevs v. Reid, 685 F.3d 903, 911 (10th Cir.2012). We will, however, consider the government’s original argument relating to constructive possession. See Aplee. Br. 17-18, 22-25.