**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 10-1166

DAVID I. HILLMAN,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 09-CR-181-PAB-1)**

Daniel J. Sears, Daniel J. Sears, P.C. Denver, Colorado, for Appellant.

Andrew A. Vogt, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief) United States Attorney's Office, Denver, Colorado, for Appellee.

Before **O'BRIEN**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

After a jury trial, David Hillman was convicted of several crimes arising from a scheme to steal hundreds of thousands of dollars from an insurance company for which he worked. His girlfriend, Hillary Shaffer, used her position

in the company's annuities department to transfers funds from inactive annuities, where the company might have owed money but could not locate the annuitant, to Hillman. Hillman's defense at trial was that he was duped by Shaffer as to the illegal source of the money—he believed her when she claimed the money came from her grandmother's trust.

On appeal, Hillman challenges his convictions for money laundering, conspiracy to commit money laundering, and making false statements to a federal agent. He argues (1) the district court should have dismissed the indictment based on prejudicial statements made by the prosecutor and a witness to the grand jury, (2) the prosecutor violated Hillman's due process rights when questioning a witness in a pre-indictment interview, (3) trial testimony by a government witness violated Hillman's right to a fair trial, and (4) the district court should not have given a deliberate ignorance jury instruction. We hold that none of these claims fundamentally affected the fairness of trial or were otherwise an abuse of discretion by the district court.

Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Hillman and Shaffer both worked for Great-West Life, an insurance company with offices in Denver. They lived together and had a romantic relationship. He worked in the life insurance department processing payments to

customer accounts. She worked in the annuities department administering customer policies.

In September 2001, Shaffer and Hillman were under financial pressure. Hillman was recently terminated by Great-West Life, and they were falling behind on their bills, writing bounced checks, and dealing with collection agencies. As a result, Shaffer devised a plan to steal the money owed on inactive Great-West Life annuity policies. Annuities are inactive when payments are owed to the policyholder, but where the policyholder cannot be located and their status is unknown. Shaffer handled disbursements for the annuities department and planned to steal the money by issuing a check that would empty an inactive annuity account. She figured no one would notice her stealing the funds from these annuities because some of the policyholders had been missing for years.

Shaffer shared her plan with Hillman and explained how they could make ends meet by taking money from the inactive annuities. Hillman told Shaffer she should take the money, and they discussed bringing in a third party to whom they could make the checks payable in order to disguise their tracks. They worried that if they used Hillman's name, someone might see it on a check and become suspicious. Hillman suggested they use his friend as a third-party to receive the checks, but his friend wanted no part in the scheme.

After waiting a few months, Shaffer launched her scheme and cut the first check in Hillman's name. Shaffer presented Hillman with the check and told him

the funds were from her "grandmother's trust." However, he doubted the explanation that her grandmother was the source of the funds. At one time, Hillman had lived near Shaffer's family in Pennsylvania and was well aware of their finances. But he did not question Shaffer further or challenge the origins of the funds. He took the check and deposited it in their joint bank account. After this first discussion, Hillman and Shaffer never again discussed her grandmother's trust or the source of the money. Shaffer continued this process of writing checks payable to Hillman and stealing funds from inactive annuities.

Over the course of the scheme, Hillman and Shaffer stole over $816,000 from Great-West Life accounts and deposited the funds into their bank account. The scheme came to light when a policyholder eventually sought a payout from one of the inactive annuities that Shaffer had drained of money.

Finding the policy had already been paid out, Great-West Life conducted an internal investigation to determine why a client was seeking a payout from an empty account. The investigation revealed a check from the account was made out to Hillman. Great-West Life combed its records, quickly linked Hillman to Shaffer, and searched for other checks Shaffer issued to Hillman. Great-West Life contacted the FBI and IRS who began their own investigation. In an interview with FBI agents, Shaffer admitted she had taken the money from the inactive annuities, and she provided a written confession describing her participation in the scheme.

In 2007, Shaffer pleaded guilty to wire fraud in connection with the Great-West Life scheme and entered into a plea agreement. In return for a sentencing recommendation, Shaffer agreed to cooperate in any further investigation and prosecution of the scheme.

In 2009, a grand jury indicted Hillman on one count of conspiracy to engage in money laundering (18 U.S.C. § 1956(h)), five counts of money laundering (18 U.S.C. §§ 1957(a) & 2), and one count of false statements to a federal law enforcement agent (18 U.S.C. § 1001(a)(2)). Hillman moved to dismiss the indictment, arguing the government had improperly guided the deliberations of the grand jury. The district court denied the motion and a jury found him guilty on all counts. The district court sentenced Hillman to 60 months' imprisonment and ordered him to pay restitution of $806,096.85.

## II. Discussion

Hillman makes four claims on appeal: (1) the district court erred when it denied his motion to dismiss the indictment based on statements made to the grand jury by the prosecutor and a witness; (2) the prosecutor's questions during a pre-indictment interview of Shaffer violated Hillman's due process rights; (3) an IRS Agent invaded the province of the jury with his trial testimony and violated Hillman's due process right to a fair trial; and (4) the district court erred when it gave the jury a deliberate ignorance instruction.

We find his arguments unpersuasive and address each in turn.

**A. Grand Jury Proceedings**

Hillman first contends the district court erred when it denied his motion to dismiss the indictment based on prosecutorial misconduct. Specifically, he alleges certain questions from the prosecuting Assistant United States Attorney (AUSA) and the responses from a witness, an IRS Agent, improperly offered opinions as to Hillman's guilt and legal conclusions to be drawn from the evidence. He claims these statements invaded the deliberative processes of the grand jury and impaired its ability to independently decide whether to return an indictment.

We disagree. The grand jury testimony Hillman identifies was not improper and did not instruct the grand jury that Hillman violated the law. And even if we found evidence of prosecutorial misconduct, under applicable law Hillman's claims are moot because a petit jury found him guilty of the charges beyond a reasonable doubt.

"We review de novo a trial court's determination of whether a prosecutor's alleged misconduct before the grand jury warrants dismissal of the indictment."[1]

---

[1] Both Hillman and the government contend our review of the district court's denial of a motion to dismiss an indictment is for abuse of discretion. As a general rule, they are correct. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1265 (10th Cir. 2006) (motion to dismiss for selective prosecution). But when we review a claim of prosecutorial misconduct before the grand jury, our precedent directs we conduct de novo review. *See United States v. Kilpatrick*, 821 F.2d 1456, 1467 (10th Cir. 1987) *aff'd sub nom. Bank of Nova Scotia v. United States,* 487 U.S. 250 (1988). It appears other circuit courts are split over

(continued...)

*United States v. Crockett*, 435 F.3d 1305, 1316 (10th Cir. 2006). We are mindful that "[d]ismissal of an indictment returned after deliberation by a grand jury is a very drastic action." *United States v. Anderson*, 778 F.2d 602, 606 (10th Cir. 1985).

### 1. Grand Jury Proceedings

Hillman identifies three instances where the AUSA and IRS Agent allegedly advised the grand jury that Hillman's conduct violated the law. He argues the AUSA and IRS Agent told the grand jury that Hillman violated the very statutes the grand jury was empaneled to deliberate.

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). But we may dismiss an indictment "for prosecutorial misconduct which is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983); *see also Bank of Nova Scotia*, 487 U.S. at 256 ("[D]ismissal of the

---

[1](...continued)
whether dismissal of an indictment based on alleged prosecutorial misconduct before a grand jury is reviewed de novo or for abuse of discretion. *Compare United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) ("The district court's determination of whether alleged prosecutorial misconduct before the grand jury requires dismissal of an indictment is reviewed de novo.") *with United States v. Useni*, 516 F.3d 634, 656 (7th Cir. 2008) ("We review a district court's denial of a motion to dismiss an indictment based on prosecutorial misconduct for abuse of discretion.").

indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.") (quotations omitted); *United States v. Apperson*, 441 F.3d 1162, 1189 (10th Cir. 2006) (quoting *Pino*); GRAND JURY LAW & PRAC. § 9:2 (2d ed.) ("Even if an improper comment has been made, it will not necessarily result in dismissal of the indictment . . . . Ultimately the question is whether the prosecutor's comments have biased the grand jury and impaired its ability to review the case against the accused impartially and independently.").

A grand jury's independent judgment is compromised when the prosecutor's misconduct invades the grand jury's independent deliberative process and substantially affects its decision to indict. *See United States v. Sigma Int'l, Inc.*, 244 F.3d 841, 856 (11th Cir. 2001) *vacated on other grounds by* 287 F.3d 1325 (11th Cir. 2002) ("So, too, would we dismiss an indictment that was issued by a 'kangaroo grand jury'—one whose deliberations were so overborne by a prosecutor or judge that the indictment was, in effect, the prosecutor's or judge's handiwork, and not the result of a considered judgment by an independently functioning grand jury."); *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982) ("[W]e will dismiss an indictment only when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury."); *cf.*

*United States v. Williams*, 504 U.S. 36, 49 (1992) ("[T]he Fifth Amendment's constitutional guarantee presupposes an investigative body acting independently of either prosecuting attorney or judge.") (quotations and emphasis omitted). But even with this standard, a "common theme of the cases is that prosecutorial misconduct alone [or at least rarely] is not a valid reason to dismiss an indictment." *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987) *aff'd sub nom. Bank of Nova Scotia v. United States,* 487 U.S. 250 (1988). These principles were not violated here.

Hillman first challenges the prosecutor's examination of an IRS Agent regarding Hillman's truthfulness in an interview with federal agents. During questioning by the AUSA, the IRS Agent discussed his review of Hillman's tax returns. Hillman had listed several part-time jobs as sources of income but did not report the funds obtained from the Great-West Life scheme. The IRS Agent testified Hillman had claimed he did not know why the "money he received from Shaffer's grandmother was not reported. Basically, he lied about the proceeds of these Great-West Life checks." R., Vol. II at 21.[2] Hillman argues this statement

---

[2] In Hillman's motion to dismiss before the district court, he also identified the IRS Agent's testimony that Hillman initially had denied endorsing over 30 checks from Great-West Life, even though they bore his signature. However, later in the same interview—after being told the checks could be analyzed for fingerprints and subjected to a handwriting comparison—Hillman confessed he had signed the checks and lied about not signing them. Because Hillman does not challenge these statements, we do not address them. We do consider them below

(continued...)

instructed the grand jury that Hillman had violated the law against making false statements to federal agents.

Our review of the AUSA's questions and the IRS Agent's testimony to the grand jury reveal nothing improper. During Hillman's interview with the IRS Agent, he initially claimed the money he received was from Shaffer's grandmother's trust and not the Great-West Life scheme. Later in the same interview, Hillman was confronted with over 30 Great-West Life checks that he had negotiated and endorsed. Initially, Hillman denied endorsing the checks, but he later changed his story, admitting he had signed the checks and lied earlier in the interview. Therefore the IRS Agent's statement that Hillman "lied" about the Great-West Life checks was simply a recitation of the facts of the interview, not an instruction that Hillman's conduct violated the law.

Hillman also challenges the IRS Agent's testimony recounting that Hillman had lived briefly in a trailer park operated by Shaffer's grandparents. The AUSA asked the IRS Agent whether Hillman lived in the trailer park "before all the fraud started to happen in the case." *Id.* at 38. Hillman argues this statement characterized his actions as fraud. He claims it left nothing for the grand jury to deliberate and decide on its own whether Hillman actually was involved in the fraud. We again disagree. While the AUSA's use of the term "fraud" was

[2](...continued)
regarding Hillman's challenge to their admissibility at trial.

-10-

conclusory and should not have been used, the question was an attempt to establish a time-frame and not the ultimate fact of whether Hillman was involved in the Great-West Life scheme. Prior to this question, the IRS Agent testified that Shaffer had already pleaded guilty and admitted taking the funds. Thus, the mere reference to fraud in the AUSA's question did not improperly influence the grand jury, because it was already aware Shaffer admitted to her involvement in a scheme to take money from Great-West Life.

Finally, Hillman challenges the AUSA's examination of the IRS Agent regarding his investigation into Hillman's use of the funds obtained from the scheme. The AUSA asked the IRS Agent whether he looked into banking transactions that "were in the amount of $10,000 or more from the stolen proceeds." *Id.* at 39. The IRS Agent responded he had, because the "money laundering statute" prohibits transactions over that amount "involving proceeds from some sort of unlawful activity." *Id.* The AUSA then followed-up and asked about the type of unlawful activity involved. The IRS Agent replied the unlawful activity was "wire fraud," to which Shaffer had pleaded guilty. *Id.* The IRS Agent also repeated that a person violates the money-laundering statute if he "takes monies and uses them in banks or to acquire assets in amounts greater than $10,000." *Id.*

Hillman does not argue this testimony was inaccurate. Instead, he claims the grand jury was left with nothing to deliberate because the statements

-11-

instructed the grand jurors that Hillman had violated the money-laundering statute. A review of the IRS Agent's testimony reveals Hillman is mistaken. The IRS Agent was explaining the course of his investigation, how Shaffer's fraud interacted with the money-laundering statute, and why he focused on transactions over $10,000. He was not instructing the jury that Hillman had violated the money-laundering statute, and we find nothing improper about the IRS Agent's testimony.

In sum, none of the statements individually or collectively improperly invaded the grand jury's deliberative processes.

*2. Trial Proceedings*

Even if we were to find prosecutorial misconduct before the grand jury, Hillman's claim still fails. When we examine whether an indictment should be dismissed based on prosecutorial misconduct before the grand jury, "the question whether the decision to indict was affected is not the focus of our review after a verdict of guilty has been rendered at trial." *United States v. Wiseman*, 172 F.3d 1196, 1205 (10th Cir. 1999). Instead, our focus shifts, and we

> must determine whether the claimed errors should be characterized as technical or procedural and affecting only the probable cause charging decision by the grand jury, or whether the alleged errors should be characterized as threatening the defendant's right to fundamental fairness in the criminal process. If the errors can be characterized as procedural violations affecting only the probable cause charging decision by the grand jury, *then the defendant must have successfully challenged the indictment before the petit jury rendered a guilty verdict.*

-12-

*Id.* (quoting *Kilpatrick*, 821 F.2d at 1466) (emphasis added).  Only if "errors can be characterized as threatening the defendant's rights to fundamental fairness as 'go[ing] beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment,' a determination of guilt by a petit jury will not moot the issue."  *Kilpatrick*, 821 F.2d at 1466 (quoting *United States v. Taylor*, 798 F.2d 1337, 1340 (10th Cir. 1986)).

Thus, after a petit jury's guilty verdict we will not consider a defendant's arguments regarding errors affecting only the grand jury's finding of probable cause, because those claims are mooted by the petit jury's findings of guilt:

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant[ was] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Wiseman*, 172 F.3d at 1205–06 (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)).

Nonetheless, there is a small class of cases in which the errors before the grand jury "are deemed fundamental," and these cases are "isolated exceptions to the harmless-error rule."  *Bank of Nova Scotia*, 487 U.S. at 256.  Due to the nature of the errors, "these cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."  *Id.* at 257.

-13-

In this case, Hillman claims the errors before the grand jury were fundamental errors. He is incorrect. In *Bank of Nova Scotia*, the Supreme Court noted errors involving race and gender discrimination in the grand juror selection process exemplified the type of error that would render grand jury proceedings fundamentally unfair. *Id.* (citing *Vasquez v. Hillery*, 474 U.S. 254, 260–64 (1986) (racial discrimination in grand juror selection process); *Ballard v. United States*, 329 U.S. 187, 193–94 (1946) (gender discrimination in grand juror selection process)). The errors Hillman alleges here—assuming they exist—do not approach the level of fundamental error. Any errors here were not structural and certainly do not call into question the fundamental fairness of the grand jury proceedings. Instead, they "should be characterized as 'technical' or 'procedural' errors affecting only the grand jury's finding of probable cause." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244 (10th Cir. 1996).

In sum, because the petit jury found Hillman guilty on all counts, any errors before the grand jury affecting its finding of probable cause are harmless.

## B. Witness Interview

Hillman next argues the AUSA violated his due process rights by improperly influencing a witness's testimony in an interview prior to trial. Specifically, he alleges the AUSA injected his own theory on the meaning of the term "grandma's" trust when he asked Shaffer during a pre-indictment interview

whether the term was a code-word for the Great-West Life scheme. In prior interviews, Shaffer had never stated the term was a code-word for the scheme.

Despite his assertions to the contrary, Hillman fails to identify in the record where he raised this issue before the district court. Our own review of the record also could not locate where he raised this issue before the district court and thus we review for plain error. To obtain relief, Hillman must demonstrate:

> (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007).

After a careful review of the record, we find nothing improper about the AUSA's interview and we conclude there was no error, much less plain error. Hillman asserts because Shaffer had never mentioned "grandma" as a code-word previously, the AUSA engaged in prosecutorial misconduct by framing his theory of the case in the guise of eliciting information from a witness. Yet, from the interview notes, there is no hint of impropriety and no indication the AUSA was trying to influence Shaffer. The AUSA asked only one question regarding the use of a code-word and it appears he was simply trying to understand the facts of the case—whether "grandma" was a code-word for the Great-West Life scheme. Resolving whether the term was, in fact, a code-word was an important issue in the case because it related to Hillman's knowledge of the scheme. In context, at

-15-

best the AUSA's question was not an attempt to influence Shaffer's testimony, but simply a means to understand the contours of the scheme. Thus we find no error.

Even assuming an error, Hillman cannot demonstrate it was plain. He cites no authority for the novel premise that he has a due process right in a prosecutor's questions during an interview of a witness two months before Hillman was indicted. He cites to the ABA Standards for Criminal Justice to claim the AUSA violated the duty "to seek justice not merely to convict." ABA Standards for Criminal Justice § 3-1.2(c) (3d ed. 1993). But they do not establish a threat to due process arising from a prosecutor's questions of a witness during a pre-indictment investigation. Without more, Hillman cannot satisfy his obligation to show that an error, if it occurred, was not "clear or obvious under current law." *Goode*, 483 F.3d at 681; *see also United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011) ("In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue.").

Nor could Hillman demonstrate prejudice. Shaffer did not testify during the grand jury proceedings, so any alleged prosecutorial influence on her did not affect its decision to indict. Moreover, it was Hillman's own counsel who first raised the issue at trial of whether "grandma" was a code-word for Great-West Life. Regarding the phrase, Shaffer testified "we always referred to it" and

"that's how we referred to it" as grandma's trust. R., Vol. III at 297.[3] Hillman also raised the issue of improper influence on cross-examination of Shaffer. He asked if she had ever referred to grandma's trust as a code-word in an interview before she was asked that question by the AUSA, and she answered she had not. The jury was able to consider this statement as it judged Shaffer's credibility as a witness.

In short, we find no plain error because Hillman has identified no due process right either that he was entitled to, or that was violated. Any prejudice flowing from the testimony, moreover, was either induced by his own trial counsel or adequately addressed on cross-examination.

## C. IRS Agent's Trial Testimony

Hillman also argues he was denied the right to a fair trial because testimony from an IRS Agent allegedly invaded the province of the petit jury. Specifically, Hillman contends the IRS Agent's testimony—that Hillman had lied and been deceitful during the course of the IRS Agent's interview of him—injected the IRS Agent's beliefs that Hillman violated the law. We interpret this claim as a challenge to the district court's decision to allow, over Hillman's objection, the

---

[3] By opening this door, Hillman's counsel allowed the prosecutor to question an FBI Agent regarding the use of code words by people involved in illegal activity.

IRS Agent's testimony. We find the district court did not err in permitting the testimony.

We review the district court's admission of witness testimony for an abuse of discretion. *United States v. Rizvanovic*, 572 F.3d 1152, 1154 (10th Cir. 2009). "Under that standard, we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir. 2002).

The IRS Agent testified regarding the interview he and an FBI Agent conducted with Hillman during their investigation. In the interview, the agents inquired three separate times about the source of the funds from Great-West Life. Each time Hillman asserted Shaffer had received the money from her grandparents. Then, when confronted with the 32 Great-West Life checks, Hillman at first denied seeing or endorsing them. But when told the checks could be sent for fingerprint and handwriting analysis, Hillman apologized, admitted to signing and negotiating the checks, and admitted he had lied. Hillman argues the IRS Agent's testimony was conclusory and prejudiced him by influencing the jury, ultimately depriving him of a fair trial. We disagree.

The IRS Agent's testimony disclosed that he asked Hillman three times about the source of the money, and each time Hillman asserted it came from Shaffer's grandparents and not Great-West Life. Then, after he was confronted

-18-

with the relevant checks, Hillman initially claimed he had not signed or negotiated them. But, later in the interview, he admitted those prior answers were false. The IRS Agent's testimony was not his *opinion* that Hillman lied, but simply a factual repetition of Hillman's own answers during the interview. The testimony did not improperly invade the province of the petit jury.[4]

Thus, the district court did not abuse its discretion when it permitted the IRS Agent's testimony.

### D. Deliberate Ignorance Instruction

Hillman's last contention is that the district court erred when it gave a deliberate ignorance instruction to the jury. He asserts the instruction was improper because the government did not present sufficient evidence supporting his conviction based on his deliberate ignorance of the scheme. That is, the government failed to present evidence Hillman deliberately acted to avoid knowledge Shaffer was stealing funds from Great-West Life.

This argument has a fatal flaw. Hillman does not challenge the sufficiency of the evidence supporting his conviction based on his *actual knowledge* of the scheme. Nor does he challenge the actual knowledge instruction, itself, as improper. As we clarify below, because he does not challenge the sufficiency of

---

[4] In addition, before the IRS Agent's testimony, Hillman's counsel elicited similar testimony from the FBI Agent that Hillman was untruthful during the interview, but he does not challenge that testimony on appeal.

the evidence on a theory of actual knowledge, our case law precludes reversal of the conviction on the basis of insufficient evidence supporting an alternate theory of deliberate ignorance.

A deliberate ignorance instruction is "appropriate when a defendant denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact." *United States v. Baz*, 442 F.3d 1269, 1271–72 (10th Cir. 2006). Hillman correctly points out that a deliberate ignorance instruction should be used sparingly unless the government has produced sufficient evidence supporting the instruction. *See United States v. Hilliard*, 31 F.3d 1509, 1514 (10th Cir. 1994) ("The use of a deliberate ignorance instruction is appropriate only when evidence has been presented showing the defendant purposely contrived to avoid learning the truth.") (quotation omitted); 10th Cir. Criminal Pattern Jury Instructions No. 1.37, Cmt. (2006 ed.) ("Although the deliberate ignorance instruction in general was discouraged, it may be given 'when the Government presents evidence that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of prosecution.'" (quoting *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000)).

We recently considered the interplay between challenges to a deliberate ignorance instruction and actual knowledge for purposes of appellate review. In *United States v. Corralles*, 608 F.3d 654 (10th Cir. 2010), the jury was instructed

to consider both the defendant's actual knowledge as well as his deliberate

ignorance. On appeal, the defendant argued, like Hillman here, insufficient

evidence supported the deliberate ignorance instruction. We rejected this

argument and stated:

> [W]e need not determine in this case whether there was sufficient
> evidence of deliberate ignorance. [Defendant] does not challenge the
> sufficiency of the evidence to support a conviction based on a finding
> of actual knowledge. And when there is sufficient evidence to
> support a conviction on one theory of guilt on which the jury was
> properly instructed, we will not reverse the conviction on the ground
> that there was insufficient evidence to convict on an alternative
> ground on which the jury was instructed.

*Id.* at 657; *see also United States v. Hanzlicek*, 187 F.3d 1228, 1236 (10th Cir.

1999) ("[A] district court does not commit reversible error where it submits a

properly-defined, although factually unsupported, legal theory to the jury along

with a properly supported basis of liability.").

For this proposition, we relied on the Supreme Court's decision in *Griffin*

*v. United States*, 502 U.S. 46 (1991). In *Griffin*, the Court considered a challenge

to a conviction for conspiracy to defraud the government that was alleged to have

two objects. At trial, the government presented evidence sufficient to support

only one of the objects and insufficient to support the other. Despite this, the jury

was instructed in a way that permitted it to return a guilty verdict if it found the

defendant participated in either of the two objects of the conspiracy. The Court

determined a guilty verdict should be sustained for an offense that can be

committed by one or more means if the evidence was sufficient to support one of the means, even though it was insufficient to support the alternative. Addressing the issue of giving a jury instruction regarding an alternative means insufficiently supported by the evidence, the Court clarified:

> What we have said today does not mean that a district court cannot, in its discretion . . . eliminat[e] from the jury's consideration an alternative basis of liability that does not have adequate evidentiary support. Indeed, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. *The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction.*

*Id.* at 60 (emphasis added). This reasoning supports our decision in *Corralles* to decline review of the sufficiency of the evidence of deliberate ignorance when the sufficiency of the evidence of actual knowledge is not also challenged.

Hillman here challenges the sufficiency of the evidence supporting the deliberate ignorance instruction but does not challenge the sufficiency of the evidence supporting the actual knowledge instruction or the language of the actual knowledge instruction itself. His argument in this case is the same as the one we rejected in *Corralles*, and he has failed to provide any reasonable basis on which to distinguish his case.

We might add that even without *Corralles*, more than sufficient evidence supported the actual knowledge instruction, and a rational jury could have found Hillman knowingly participated in the Great-West Life scheme. For instance,

Hillman discussed the scheme with Shaffer when she first concocted it, he suggested using a third party to receive the checks so other Great-West Life employees would not become suspicious, and the checks Hillman deposited had stubs attached containing reference to IRA and annuity account information.  The government presented ample evidence Hillman actually knew Shaffer was stealing from Great-West Life and that the checks he deposited were from the inactive annuities.[5]

We thus find *Corralles* controls the outcome here and we reject Hillman's argument.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Hillman's conviction.

---

[5]  Likewise, even if we reached the merits of Hillman's deliberate ignorance argument, more than enough evidence supported the instruction. Ample testimony showed he had "subjective knowledge of his criminal behavior, but purposely and deliberately avoided actual knowledge of the operant facts." *United States v. Soussi*, 316 F.3d 1095, 1106 (10th Cir. 2002).