**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**July 23, 2012**

**Elisabeth A. Shumaker**

**TENTH CIRCUIT**

**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 11-2123

AGAPITO FRANCO-LOPEZ,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:09-CR-00672-MV-1)**

Submitted on the briefs:

Felipe D. J. Millan, Attorney at Law, El Paso, Texas, for Defendant-Appellant.

Kenneth J. Gonzales, United States Attorney, and Laura Fashing, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

**BRISCOE**, Chief Judge.

Defendant Agapito Franco-Lopez appeals his conviction on one count of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). The statute criminalizes the transportation of an alien who "has come to, entered, or

remains in" the country illegally. 8 U.S.C. § 1324(a)(1)(A)(ii) (emphasis added).[1]

Franco-Lopez argues that the district court erred in denying his motion for acquittal because the government did not present evidence that the transported alien illegally "entered" the United States. In support, Franco-Lopez relies on the definition of "entry" used in the context of civil immigration law or in illegal reentry cases charged under 8 U.S.C. §§ 1325 and 1326. As to this element of 8 U.S.C. § 1324(a)(1)(A)(ii), we conclude the government need only prove that the transported alien was present in the United States in violation of the law. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

On November 23, 2008, United States Border Patrol agents conducted routine surveillance from atop a mesa in Sunland Park, New Mexico, near the Mexican border. Around 9:00 a.m., Agent Marion Anest received a radio alert that a motion sensor had been triggered in his area. Peering down from the mesa with binoculars, Anest spotted several individuals running north from the direction of the border. The agent did not see them enter the United States; he first noticed them when they were between a quarter-mile and a half-mile north of the border. Anest notified nearby agents, who moved to intercept.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

As Anest tracked the fleeing individuals, he saw them jump into a dark-colored van. Agent Jahshua Binkley, who learned of the group from Anest's radio call, located the van and gave chase in his Border Patrol vehicle. The driver of the van tried to evade Binkley for three or four minutes, but the chase eventually led to a dead-end street. The occupants bailed out and fled on foot, but the agents were successful in apprehending everyone. They arrested Franco-Lopez, who had been a passenger, and Benito Hernandez, Jr., who had been driving. They also apprehended passengers Felipe Hernandez-Avila and Valente Mozqueda-Martinez, who were identified as illegal aliens.

A grand jury indicted Franco-Lopez on one count of conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (count one), and two counts of transporting an illegal alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i), and (a)(1)(A)(v)(II) (count two as to Hernandez-Avila and count three as to Mozqueda-Martinez). Aplt. App. at 15-16. After the trial began but before the government concluded its case-in-chief, the court granted the government's unopposed motion to dismiss count two of the indictment. Id. at 1.

At trial, Hernandez, the driver of the van, testified that Franco-Lopez had asked him for a ride that day because he was having car trouble. When Hernandez went to pick him up, Franco-Lopez explained that they needed to make a stop to pick up a group of people near the border. Hernandez testified that

3

Franco-Lopez was coordinating with someone on the phone as they drove toward the border. Hernandez believed his passenger was talking to someone in Mexico.

The government also presented testimony from Agent Anest, who testified that he saw several individuals flee north from the direction of the Mexican border and get into Hernandez's van. Agent Binkley testified about the brief vehicle pursuit and the ensuing foot chase. One of the transported aliens, Mozqueda-Martinez, testified that he is a Mexican national who attempted to enter the United States illegally by running across the border and boarding the van that the agents stopped.

At the close of the government's case, Franco-Lopez moved for a judgment of acquittal as to counts one and three. The court denied the motion, and the case was presented to the jury. The court instructed the jury using instructions that were agreed upon and submitted by the parties. The jury was instructed that the offense charged in count three "makes it a crime to illegally transport an alien." Aplee. Supp. App., Vol. I at 23. "To find the defendant guilty of this crime," the jury was told in Instruction 16, "you must be convinced that the government has proved each of the following beyond a reasonable doubt." Id. The second of the five elements read: "Valente Mozqueda-Martinez entered or remained in the United States unlawfully." Id. In Instruction 17, the jury was advised:

> For the purposes of determining whether or not the government has proved the second element listed in Instruction 16, "entry" under our immigration laws is

4

defined as:

> (1) crossing into the territorial limits of the United States (i.e. physical presence);
> (2) inspection and admission by an immigration officer; <u>or</u> actual and intentional evasion of inspection at the nearest inspection point; <u>and</u>
> (3) freedom from restraint.

> Even if an alien has crossed the border with the intention of evading inspection, he has not made an entry into the United States if, due to being under constant surveillance by law enforcement from the moment the alien has crossed into the United States, he lacks the freedom to go at large and mix with the population.

<u>Id.</u> at 24.

The jury found Franco-Lopez guilty on both counts one and three. In a renewed motion for judgment of acquittal, Franco-Lopez argued, as regards count three, that the government failed to present sufficient evidence that Mozqueda-Martinez entered the United States because he was always under constant surveillance by Border Patrol agents and therefore not free to mix with the general population. <u>See</u> <u>id.</u> at 32-34.

In a written order, the district court denied Franco-Lopez's motion. <u>United States v. Franco-Lopez</u>, 709 F. Supp. 2d 1152 (D.N.M. 2010). First, the court recognized that the offense of transporting an illegal alien requires the government to prove that the alien "has come to, entered, or remained in" the United States illegally—it "need not have proven all three." <u>Id.</u> at 1158-59 & n.5.

5

But the jury was instructed on count three that the government must prove Mozqueda-Martinez "entered or remained in the United States unlawfully," which did not account for the charging statute's third option that he had "come to" the country illegally. Id. at 1159, 1163.

The district court concluded that the jury instruction, drawn from Tenth Circuit Criminal Pattern Jury Instruction 2.03, was an incomplete reading of the statute. Id. at 1165. But it concluded that "this error was harmless" because, "[i]f anything, the error created potential prejudice against the government, because the Court failed to instruct the jury that Mr. Mozqueda-Martinez's 'coming to' the United States would have been sufficient to support a guilty verdict." Id. at 1165-66. The court noted that a "sheer lack of evidence [did] leave a reasonable doubt as to whether the group actually 'entered' the United States such that they were free from official restraint in the form of surveillance." Id. at 1165. But "the uncontroverted testimony of the multiple Border Patrol officers involved in Defendant's apprehension easily meets the government's burden of proof beyond a reasonable doubt that Valente Mozqueda-Martinez crossed the border, and hence 'came to' the United States without lawful authorization." Id. Further,

> the jury's verdict necessarily rested on a finding that Valente Mozqueda-Martinez either entered or remained in the United States. If the jury found that Mr. Mozqueda-Martinez "entered" the United States—whether a correct finding or not—it necessarily found that he "came to" the

6

United States.  See [United States v. Hernandez-Garcia, 284 F.3d 1135, 1139 (9th Cir. 2002)] ("to come <u>to</u> the United States is a step subsumed by the court's definition of 'entry'" (emphasis in original)).  Nor would it have been possible for the jury to find that Mr. Mozqueda-Martinez "remained in" the United States without first finding that he "came to" the United States.  See United States v. Santana-Castellano, 74 F.3d 593, 597 (5th Cir. 1996) (assuming that one "remains" in the country only after first having "entered"); United States v. Ortiz-Villegas, 49 F.3d 1435, 1436 (9th Cir. 1995) (same).  Therefore, the instruction requiring a finding that Mr. Mozqueda-Martinez "entered or remained in the United States" was merely superfluous, and caused no prejudice to Defendant.

Id. at 1166.

On June 7, 2011, the court sentenced Franco-Lopez to two years' probation as to each count, to be served concurrently.  The court entered judgment on June 14, 2011.  Franco-Lopez brought this timely appeal, but only as to the transportation count (count three).

## II

The sole issue on appeal is whether the offense of transporting an illegal alien, codified at 8 U.S.C. § 1324(a)(1)(A)(ii), requires proof that the transported illegal alien "entered" the United States when the government has established the alien's illegal presence in the United States by other means.[2]  Franco-Lopez

---

[2] We note that Franco-Lopez <u>does not</u> argue that the district court erred in instructing the jury as to the elements of this offense.  See Aplt. Br. at 1 (statement of the issues); <u>id.</u> at 10 (arguing only that "the evidence at trial

(continued...)

7

contends that he could not have committed that offense because there was no evidence the transported alien "entered" the United States "in accordance with the definition of 'entry' used in the Immigration & Nationality Act." Aplt. Br. at 16.

We review de novo a district court's denial of a defendant's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. United States v. Hamilton, 587 F.3d 1199, 1205 (10th Cir. 2009). Reversal is only appropriate if no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. United States v. Swanson, 360 F.3d 1155, 1162 (10th Cir. 2004). When conducting this review, we must consider the evidence adduced at trial in the light most favorable to the government. Id.

**A**

Franco-Lopez was charged with and convicted of violating 8 U.S.C. § 1324(a)(1)(A)(ii), which penalizes

> [a]ny person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves

---

[2](...continued)
establishes that the alien named in this count never 'entered' the United States and therefore could not have been illegally transported by Appellant"). He does not challenge the district court's conclusion that "the instruction requiring a finding that Mr. Mozqueda-Martinez 'entered or remained in the United States' was merely superfluous, and caused no prejudice to Defendant." Franco-Lopez, 709 F. Supp. 2d at 1166. He also does not challenge the district court's conclusion that there was ample evidence that Mozqueda-Martinez "crossed the border, and hence 'came to' the United States without lawful authorization." Id. at 1165. Thus, we are left with the single, narrow legal argument framed above.

8

> or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law[.]

(emphasis added). We have construed this statute to require proof that: (1) the defendant transported or moved an alien within the United States; (2) the alien was present in violation of law; (3) the defendant was aware of the alien's status; and (4) the defendant acted willfully in furtherance of the alien's violation of the law. United States v. Barajas-Chavez, 162 F.3d 1285, 1287 (10th Cir. 1999) (en banc).

Franco-Lopez focuses our attention on the second element. He asserts that he "could not have been found guilty of illegal transport of the alien named in count 3 of the indictment" because there was no evidence that Mozqueda-Martinez, the alien named in count three, ever "entered" the United States. Aplt. Br. at 10, 16. At trial, Franco-Lopez's counsel thoroughly questioned Border Patrol agents about every phase of their surveillance to show that Mozqueda-Martinez was not seen crossing the border but was only spotted after he had crossed. The agents testified Mozqueda-Martinez was then continuously tracked, and thus was never free from official restraint. See, e.g., Aplee. Supp. App., Vol. I at 192-98; id. at 220-24. After the close of evidence and the verdict was received, Franco-Lopez renewed his motion for judgment of acquittal by arguing, as regards count three, that because Mozqueda-Martinez "was not free to move about and mix with the general population[,] he was not in the United States per

9

say [sic] and could not be transported in violation of the law." Id. at 34.

Franco-Lopez has provided no legal authority to support his argument that if the government has proven that the transported alien either "has come to" or "remains in" the United States in violation of the law that the government must also prove that the transported alien "entered" the United States illegally. This is not surprising because we are aware of none.

The statute requires that the transported alien "has come to, entered, or remains in" the United States illegally. 8 U.S.C. § 1324(a)(1)(A)(ii). The statute accounts for a broad range of circumstances that may result in an alien's illegal presence in the United States. For example, many aliens who lawfully enter the United States may eventually find themselves, perhaps because of an intervening deportation order or loss of parole status, "present" in violation of the law. See, e.g., United States v. Francisco, 30 F. App'x 48, 49 (4th Cir. 2002) (unpublished) (holding that § 1324(a)(1)(A)(ii) applies to transportation of "an alien [who] enters the United States on a tourist visa and illegally stays after the visa expired"). The statute accounts for these situations by including aliens who "remain[] in" the country illegally. Likewise, an alien may unlawfully "come to" the United States without making entry. See United States v. Hernandez-Garcia, 284 F.3d 1135, 1139 (9th Cir. 2002) ("[W]e believe that 'come to' in § 1324(a)(1)(A)(ii) means just what it says, come to the United States, not come into or enter the United States."). Thus, if the government has established by

10

other means that the transported alien is present in the United States and that his presence is illegal, the government need not also prove the transported alien "entered" the United States illegally.

Our precedent construes this element to require proof that the alien "was present in violation of law." Barajas-Chavez, 162 F.3d at 1287. Our generalized inquiry into the transported alien's unlawful presence in the United States finds support in the caselaw of our sister circuits. See United States v. Lopez-Moreno, 420 F.3d 420, 438 (5th Cir. 2005) (requiring proof that passengers in the defendant's car "were in the United States illegally"); Hernandez-Garcia, 284 F.3d at 1139 (holding that, for purposes of proving transported alien's status, "it suffices for the government to show that the transporter drove an alien within this country who had come to the United States unlawfully"); United States v. Hernandez, 913 F.2d 568, 569-70 (8th Cir. 1990) (holding that there was sufficient evidence that transported aliens were "in the United States in violation of the law" when aliens testified that they did not have "papers" authorizing them to be in the country and that they were threatened with being sent back to Guatemala if discovered); United States v. Alvarado-Machado, 867 F.2d 209, 213 (5th Cir. 1989) ("In order to be convicted of transporting illegal aliens . . . , the alienage of those transported must be proved."). As the Ninth Circuit explained in Hernandez-Garcia:

> On its face the statute prohibits transportation within the

United States of an alien who has "come to, entered, or remains in the United States." These are disjunctive concepts. The crime is the transportation of an illegal alien within this country, not the alien's reentry. So long as an alien has come to the United States unlawfully and the transporter knows this (or recklessly disregards this fact), and the alien is transported within the United States, it is immaterial whether the alien has technically "entered" the country or not.

284 F.3d at 1138; see also United States v. Esparza, 882 F.2d 143, 145 (5th Cir. 1989) ("The statute sets forth, in disjunctive form, the violations. The prosecution must prove that the alien . . . 'has come to, entered, or remains in the United States in violation of the law.' The government is not required to prove all three conditions.").

We therefore conclude that proof of the transported alien's unlawful entry into the United States is one, but not the only, method to prove that "the alien was present in violation of law." Barajas-Chavez, 162 F.3d at 1287. Given the government's proof that the transported alien was present in the United States illegally, the district court did not err in holding that the government was not additionally required to prove the transported alien's entry was illegal.[3]

_____

[3] While the motion for judgment of acquittal filed in the district court challenged the sufficiency of the evidence, Franco-Lopez did not raise this argument on appeal. We read his appellate brief as only challenging the district court's legal conclusion that proof of the transported alien's entry is not required to sustain a conviction under § 1324(a)(1)(A)(ii). Therefore, we will not review the district court's conclusion that "the uncontroverted testimony of the multiple Border Patrol officers involved in Defendant's apprehension easily meets the

(continued...)

12

**B**

The district court noted, in passing, that "the Tenth Circuit's pattern jury instruction on transportation offenses under § 1324 is in tension with established law in all but three other federal circuits."  Franco-Lopez, 709 F. Supp. 2d at 1165.  As discussed, it is clear from our precedent that the government must prove the transported alien was present in the United States in violation of law.  That language is undoubtedly broader than the pattern instruction's requirement that the jury find that the alien entered or remained in the country unlawfully.  We again note, however, that Franco-Lopez has not raised as an issue on appeal whether the district court erred in instructing the jury.  But future juries should be instructed using the broader language, which is more consistent with the statutory offense and also easier for a jury to understand and apply.

**III**

We AFFIRM Franco-Lopez's conviction for violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

---

[3](...continued)
government's burden of proof beyond a reasonable doubt that Valente Mozqueda-Martinez crossed the border, and hence 'came to' the United States without lawful authorization."  Franco-Lopez, 709 F. Supp. 2d at 1165.

13