FILED
United States Court of Appeals
Tenth Circuit

December 11, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SAUL ANTONIO FLORES-LOPEZ,

      Defendant-Appellant.

No. 12-5196
(D.C. No. 4:12-CR-00041-JHP-3)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Following a second trial, Saul Antonio Flores-Lopez was convicted of

conspiracy and possessing methamphetamine with intent to distribute, and he was

sentenced to 121-months' imprisonment. He now appeals from district court orders

that denied his motions for a new trial, to dismiss the indictment, and for judgment of

acquittal. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Shortly after his arrest for selling crystallized methamphetamine, Kevin Gonzalez revealed that he had obtained the meth from a house rented by Flores-Lopez. According to Gonzalez, the meth was supplied by a man known as Hugo. Officers from the Tulsa County Drug Task Force searched Flores-Lopez's home and a detached garage pursuant to a warrant, finding a meth cutting agent, plastic vacuum sealer bags, and digital scales. When officers searched a truck that was parked in the driveway and insured by Flores-Lopez, they found multiple plastic bags containing over 1,000 grams of meth.

Flores-Lopez returned home during the search, accompanied by the two other occupants of the house, Mr. and Mrs. Munoz-DeLuna. After receiving *Miranda* warnings, Flores-Lopez admitted that he knew some type of illegal activity was being conducted from the truck. Further, he indicated that the owner of the truck, Hugo, paid his (Flores-Lopez's) rent in exchange for keeping the truck in the driveway.

A federal grand jury indicted Flores-Lopez, Hugo, and Gonzalez for (1) possessing more than 500 grams of meth with intent to distribute; and (2) conspiring to distribute and possess with intent to distribute more than 500 grams of meth. Gonzalez pleaded guilty and agreed to testify against Flores-Lopez.

At Flores-Lopez's first trial, Gonzalez testified that Hugo had directed him to deliver drugs to Flores-Lopez at least twice: once at a gas station and once at a church. Mr. Munoz-DeLuna testified initially that he had not heard Flores-Lopez

ever discuss drugs, but when later recalled to the stand by the government, he changed his testimony, revealing that he had heard a drug-related conversation. Mr. Munoz-DeLuna explained that he falsely denied hearing a drug-related conversation because he had received a threatening text. Flores-Lopez moved for a mistrial, and the district court granted the motion.

Flores-Lopez's second trial began two months later. Police officers involved in the search again testified, recounting Flores-Lopez's admissions that he was aware of illegal activity being conducted from the truck and that Hugo paid his rent to keep the truck there. Gonzalez again testified for the government, stating that he had been to Flores-Lopez's house three or four times to pick up drugs or give money to Hugo. On one occasion, Hugo instructed Gonzalez to put drugs in Flores-Lopez's bedroom. Additionally, Hugo gave Gonzalez two cell phones on which he received calls from both Hugo and Flores-Lopez. Gonzalez stated that "most of the time," the calls with Flores-Lopez were "about drugs." R., Vol. III at 551. Additionally, Gonzalez kept a drug ledger, which referenced a drug transaction with Flores-Lopez.

Consistent with his testimony at the first trial, Gonzalez recounted drug deliveries to Flores-Lopez at a gas station and a church. But unlike his testimony at the first trial, Gonzalez testified that he made two or three deliveries to Flores-Lopez at the church instead of just the one delivery. On cross-examination, defense counsel pointed out that Gonzalez had at the second trial increased the number of deliveries to the church and that Gonzalez had not mentioned placing drugs in Flores-Lopez's

bedroom during the first trial. Gonzalez insisted that he was "not making up anything," *id.* at 522, and that he had given the government the new information during a trial-preparation meeting the prior week. Gonzalez then went on to increase the number of gas-station deliveries to "at least two," with the remainder of the deliveries occurring at the church. *Id.* at 532. When questioned on cross-examination about the discrepancies, Gonzalez stated that he could not "really . . . remember." *Id.* at 533. Finally, while Gonzalez testified on cross-examination that there was no agreement to distribute meth, on redirect he clarified that there was no written agreement.

FBI agent Matthew Ferguson testified that the items found in Flores-Lopez's house indicated drug distribution. On cross-examination, agent Ferguson stated that he had learned a week earlier that Gonzalez had changed his recollection concerning the number of drug deliveries.

Defense counsel then moved for a mistrial, arguing that the government had failed to disclose "*Giglio* materials." *Id.* at 582.[1] Specifically, defense counsel argued that while the government had notified him the prior day that Gonzalez would testify that Hugo directed him to place drugs in Flores-Lopez's bedroom, the government did not reveal the other changes in Gonzalez's testimony. The prosecutor responded that "Gonzalez['s] testi[mony] . . . regarding multiple meetings

[1] In *Giglio v. United States*, the Supreme Court held that "[a] new trial is required if . . . false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." 405 U.S. 150, 154 (1972) (second ellipsis in original).

- 4 -

at [the gas station] and multiple meetings at the church . . . was new to us." *Id.* at 594. Further, the prosecutor asserted that "[n]o government official, no sheriff's deputy, no police officer, no assistant U.S. attorney knew that information prior to [Gonzalez's] testimony today." *Id.* Regarding Agent Ferguson's testimony that Gonzalez had in fact identified more drug deliveries the prior week, the prosecutor indicated she had spoken to the agent, and "he simply did not understand [defense counsel's] questions fully[,] and [he] answered inaccurately." *Id.* at 609.

The district court declined to grant a mistrial, noting that such a remedy had already been imposed once in the case and that defense counsel had effectively cross-examined both Gonzalez and Agent Ferguson. But the court announced it would continue the trial to the following week to allow defense counsel to recall "any witnesses that he wish[ed] to call" regarding the "increased activities at the church and increased activities at [the gas station]," *id.* at 613, 614. Prior to adjourning, however, the prosecutor and defense counsel were permitted to question Agent Ferguson and Gonzalez outside the jury's presence. Agent Ferguson testified that the only new information Gonzalez revealed during the meeting a week earlier, in which the prosecutor was present, concerned placing drugs in Flores-Lopez's bedroom. Gonzalez testified, however, that at the meeting he had discussed multiple deliveries at the church, but he did not remember saying anything at the meeting about multiple deliveries to the gas station. He also admitted that "[m]aybe" he was confusing

conversations, *id.* at 649, and that he was "maybe 75 percent sure" that he mentioned multiple church deliveries at the meeting, *id.* at 651.

Prior to the trial resuming, Flores-Lopez moved to dismiss the indictment, arguing that Gonzalez's "memory [was] wholly unreliable, [and that] the [c]ourt should not allow this matter to continue." R., Vol. I at 94. The court denied the motion, stating that the trial continuance had "cure[d] the problem," R., Vol. III at 670, and that "the jury will have to make th[e] ultimate decision," *id.* at 671.

Trial resumed with Agent Ferguson on the stand under cross-examination. He testified that he believed Gonzalez was "confused" when he claimed to have told the government about additional deliveries to the church. *Id.* at 686. The government then rested its case.

Flores-Lopez then moved for judgment of acquittal on both counts under Fed. R. Crim. P. 29. He argued that there was no evidence of an agreement to possess or distribute methamphetamine and that there was no evidence showing that he possessed or distributed methamphetamine. The court denied the motion, and the defense began its case in chief.

Mr. Munoz-DeLuna testified that he did not know Gonzalez, and when he (Mr. Munoz-DeLuna) worked with Flores-Lopez at the church "for three or four days," he never saw Gonzalez there. *Id.* at 714. Two builders testified that Flores-Lopez set tile for them and that they trusted Flores-Lopez.

- 6 -

Finally, Flores-Lopez testified. He stated that he did not know that Hugo and Gonzalez were involved with drugs. He claimed that Hugo worked for him and that he insured Hugo's truck because Hugo was in the country illegally and needed help. Further, he disagreed with statements police officers attributed to him concerning his knowledge of drugs in the truck and Hugo paying his rent in exchange for keeping the truck in his driveway. Finally, Flores-Lopez denied ever meeting Gonzalez to receive drugs at either the church or the gas station.

After deliberating, the jury found Flores-Lopez guilty on both counts. Flores-Lopez filed a renewed Rule 29 motion for judgment of acquittal, which the district court denied before sentencing him to 121-months' imprisonment.

## DISCUSSION

### I. Motion for a Mistrial

"We review a district court's refusal to grant a mistrial for abuse of discretion." *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). "In determining whether a mistrial should have been granted, we focus on whether the defendant's right to a fair and impartial trial was impaired." *United States v. Ivory*, 532 F.3d 1095, 1099 (10th Cir. 2008) (internal quotation marks omitted).

Flores-Lopez argues that the district court abused its discretion in denying a mistrial in the second trial on the basis that it had already imposed that remedy in the first trial. Aplt. Opening Br. at 18. Our reading of the trial transcript shows, however, that the district court's reluctance to grant another mistrial was merely a

recognition that a mistrial is a drastic remedy, *see United States v. Klinginsmith*, 25 F.3d 1507, 1511 (10th Cir. 1994). But more importantly, in addition to citing the prior mistrial, the court indicated that another mistrial was unwarranted given defense counsel's effective cross-examination of Gonzalez and Agent Ferguson. Indeed, defense counsel successfully pointed out the discrepancies in Gonzalez's testimony and forced him to concede that he could not "really . . . remember" how many deliveries occurred at the church. R., Vol. III at 533.

To the extent Flores-Lopez contends he would have made Gonzalez's "ever changing story" the focal part of the defense, Aplt. Opening Br. at 21, we note that the district court allowed defense counsel to further question Gonzalez and Agent Ferguson and it then continued the trial to the following week so defense counsel could recall "any witnesses." R., Vol. III at 613. When the trial resumed, defense counsel recalled only Agent Ferguson, who conceded that Gonzalez must have been confused about additional deliveries to the church.

Given Gonzalez's difficulties remembering what he revealed at the pretrial meeting and the testimony from both he and Agent Ferguson showing his recollection problems to the jury, we conclude that Flores-Lopez's right to a fair and impartial trial was not impaired. Consequently, the district court acted within its discretion in not declaring a mistrial.

## II. Motion to Dismiss

Flores-Lopez appears to contend that the district court should have dismissed the indictment because of prosecutorial misconduct concerning Gonzalez's testimony. "We review a district court's denial of a motion to dismiss an indictment based on prosecutorial misconduct for abuse of discretion." *United States v. Hillman*, 642 F.3d 929, 933 n.1 (10th Cir. 2011) (internal quotation marks omitted).

Flores-Lopez argues that it was "improper to allow [Gonzalez's] testimony to be used and argued by the government as reliable to the jury, and then behind closed doors to allow that same government to argue that the witness' recollection is improper." Aplt. Opening Br. at 24. Flores-Lopez is attempting to equate two unrelated points. The government's position at trial was that Gonzalez's testimony supported Flores-Lopez's involvement in the methamphetamine-distribution conspiracy. Outside the jury's presence, the government did not take a contrary position. Rather, it argued that Gonzalez was mistaken about remembering whether he had told the government during the pretrial meeting about more deliveries. And in regard to whether Gonzalez had in fact imparted that information to the government, we note that Gonzalez was not sure he had, and both the prosecutor and (ultimately) Agent Ferguson denied that Gonzalez had revealed the additional deliveries.

Significantly, as we explained earlier, defense counsel was granted a continuance to further explore the matter and he was able on cross-examination to expose the unreliability of Gonzalez's testimony. As the district court recognized, it

was then up to the jury to determine what weight, if any, to give Gonzalez's testimony. The district court did not abuse its discretion in denying Flores-Lopez's motion to dismiss.

### III. Motion for Judgment of Acquittal

"We review de novo a district court's denial of a defendant's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29." *United States v. Franco-Lopez*, 687 F.3d 1222, 1226 (10th Cir. 2012). "Reversal is only appropriate if no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* "When conducting this review, we must consider the evidence adduced at trial in the light most favorable to the government." *Id.*

Flores-Lopez first attacks his conspiracy conviction, arguing that there was no evidence of an agreement to distribute meth. "Because conspiracies are, by definition, secretive, elements of the crime are often established through circumstantial evidence. Proof of a tacit agreement to break the law is often sufficient." *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005) (citation omitted).

Here, there was evidence that Gonzalez went to Flores-Lopez's house to pick up meth or give Hugo money. Hugo directed Gonzalez's drug activities and once instructed Gonzalez to place meth in Flores-Lopez's bedroom. Gonzalez also delivered meth to Flores-Lopez at a church and a gas station. And Flores-Lopez told

police that he knew something illegal was going on with Hugo's truck that he insured and allowed to be parked in his driveway in exchange for Hugo paying his (Flores-Lopez's) rent. Inside Flores-Lopez's house and garage, police found materials consistent with meth distribution. Given this evidence, any rational trier of fact could infer that Flores-Lopez was part of an agreement to distribute meth.

Flores-Lopez next contends that his conviction for possessing meth with intent to distribute cannot stand because there was no evidence he took "any steps to distribute." Aplt. Opening Br. at 25. But "a defendant may be held responsible for the crimes of his co-conspirators, if those crimes are committed to help advance the conspiracy and are within the reasonably foreseeable scope of the conspiracy." *United States v. Clark*, 717 F.3d 790, 808 (10th Cir. 2013) (brackets and internal quotation marks omitted), *petition for cert. filed*, 82 U.S.L.W. 3138 (Sept. 16, 2013) (No. 13-358). And there was evidence showing that Flores-Lopez's coconspirators were distributing meth and that Flores-Lopez was aware that was occurring. Thus, distribution can be imputed to Flores-Lopez based on the distribution activities of Gonzalez and Hugo.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

- 11 -